**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:25-CV-62431-DAMIAN/AUGUSTIN-BIRCH**

JUANDEL PENA and MARTINA RUIZ,

     **Plaintiffs,**

v.

WELLS FARGO BANK, N.A.,

     **Defendant.**

_____/

**REPORT AND RECOMMENDATION ON**
**PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**

This cause comes before the Court on Juandel Pena and Martina Ruiz's Renewed Motion for Preliminary Injunction. DE 14. The Honorable Melissa Damian, United States District Judge, referred the Motion to the undersigned United States Magistrate Judge for a report and recommendation. *See* DE 24. Defendant Wells Fargo Bank, N.A. filed a response, DE 16, and Plaintiffs filed a reply. DE 17. Having carefully considered the record and the briefing and being otherwise fully advised, the Court **RECOMMENDS DENYING** Plaintiffs' Renewed Motion for Preliminary Injunction [DE 14].

**I. Background**

Plaintiffs have sued Defendant for, among other purported violations, violating section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"). DE 1. Although Plaintiffs' allegations are at times unclear and disjointed, the Court understands their allegations to be as follows. On December 15, 2022, Plaintiffs financed a 2015 BMW X5M through Defendant. *Id.* ¶ 9. Two years later, Plaintiff Pena was involved in an accident and has been "financially disabled" since then. *Id.* ¶ 6. In 2025, due to Plaintiff Pena's financial hardship, Plaintiffs requested a deferment of their

payments but were denied. *Id.* ¶ 10. On June 16, 2025, Defendant sent Plaintiffs a delinquency letter, demanding $1,498.20, and, on July 18, 2025, "vaguely threatened 'possible' repossession." *Id.* ¶¶ 11, 12. On August 1, 2025, Defendant allegedly made good on its threat of repossession and repossessed Plaintiffs' BMW. *Id.* ¶ 13. Defendant mailed a post-repossession notice to Plaintiffs that same day. *Id.* ¶ 14. According to Plaintiffs, Defendant's agent improperly secured the BMW during repossession, which caused $34,183.26 in damage. *Id.* ¶¶ 13, 15.

On August 5, 2025, a "Manager Angelo granted a 21-day redemption extension to August 28." *Id.* ¶ 16. A week later, "Defendant posted fabricated $12,894 'deficiency balance adjustment' before reinstatement despite no sale of the" BMW. *Id.* ¶ 17. Plaintiffs called Defendant on August 13, 2025, and a representative confirmed that the redemption extension was still in place until August 28, 2025, and that there was still time to reinstate. *Id.* ¶ 18. Plaintiffs made two reinstatement payments, but the $12,894 deficiency remained visible despite Plaintiffs making the final reinstatement payment. *Id.* ¶¶ 20–22. However, on August 21, 2025, "Defendant deducted $12,894 as 'charge-off adjustment.'" *Id.* ¶ 23.

A week later, Plaintiffs picked up their BMW, noticed damage, and called Defendant to demand that Defendant repair the BMW. *Id.* ¶ 24. Plaintiffs "disputed Equifax," and "Defendant verified false July repo" on September 6, 2025. *Id.* ¶ 25. Plaintiffs later sent an email to Defendant detailing the damage to the BMW, and Defendant requested additional time to respond. *Id.* ¶¶ 26, 27. Not receiving a response on time, Plaintiff Pena sent Defendant a "Final Escalation" email, demanding repairs and estimating the damage to be $34,183.26. *Id.* ¶ 28. Defendant did not respond to Plaintiff Pena's email, so Plaintiffs filed a complaint with the Consumer Financial Protection Bureau. *Id.* ¶ 29. Plaintiffs allege that "Defendant reports July 2025 repo inconsistently, despite August 1 event + August 14 reinstatement; inconsistent bureau status." *Id.* ¶ 34.

Plaintiffs allege that Defendant has violated section 1681s-2(b) of the FCRA in three ways.[1] First, Plaintiffs contend that Defendant "[f]alsely reported July 2025 repossession despite August 1, 2025 event, August 14 reinstatement, and August 28 return." *Id.* ¶ 37. Second, Plaintiffs maintain that Defendant "[f]abricated $12,894 deficiency posted August 12 and visible until August 21—6 days post-reinstatement." *Id.* ¶ 38. Lastly, Plaintiffs assert that Defendant "[f]ailed to reasonably reinvestigate after August 28 . . . and September 6 disputes, verifying false tradeline." *Id.* ¶ 39.

After filing their Complaint, Plaintiffs filed the present Renewed Motion for Preliminary Injunction.[2] DE 14. Therein, Plaintiffs argue that they have suffered "concrete harm from [Defendant's] inaccurate reporting" and that "Defendant's post-service admissions and continued false reporting constitute willful violation of the FCRA and irreparable harm requiring immediate injunctive relief." *Id.* at 2.

## II. Analysis

Before evaluating whether Plaintiffs have satisfied the four requirements for a preliminary injunction, the Court must first determine whether Plaintiffs can even obtain injunctive relief under the FCRA. *See Stolfat v. Equifax, Inc.*, No. 24-80856-CV, 2024 WL 4881239, at *1 (S.D. Fla. Sept. 19, 2024) ("Before a court reaches the merits of whether to grant a preliminary injunction, it must first be assured it has the authority to grant the requested equitable relief."). Plaintiffs cannot. *See id.* ("[T]he FCRA does not, itself, confer upon this court the power to issue a preliminary injunction in consumer cases."); *Gonzalez v. Macy's/DSNB*, No. 06-61571-CIV, 2006 WL 5849317, at *1 (S.D. Fla. Dec. 12, 2006) ("Upon a review of the FCRA's civil remedy provisions,

---

[1] Plaintiffs raise other causes of action in addition to the FCRA. *See* DE 1 at 11–17. The Court does not discuss those causes of action because they are not pertinent to Plaintiffs' Motion for Preliminary Injunction.

[2] This Court denied Plaintiffs' first Motion for Preliminary Injunction give that Plaintiffs filed it before perfecting service upon Defendant. *See* DE 11.

the plain language of the statute reveals that a private plaintiff can only obtain compensatory damages, punitive damages and attorney's fees. Declaratory or injunctive relief is not available to a private plaintiff . . . ." (citations omitted)); *Mangio v. Equifax, Inc.*, 887 F. Supp. 283, 285 (S.D. Fla. 1995) ("[I]njunctive relief is not available to Mangio under the FCRA."); *see also Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) ("We hold that the affirmative grant of power to the [Federal Trade Commission] to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief [under the FCRA] solely with the FTC.").

Defendant maintains that Plaintiffs cannot obtain injunctive relief under the FCRA in its response, citing much of the same caselaw as above. DE 16 at 3–5. But Plaintiffs contend in their reply that this body of caselaw is outdated given the Eleventh Circuit's opinion in *Holden v. Holiday Inn Club Vacations, Inc.*, 98 F.4th 1359 (11th Cir. 2024), which Plaintiffs incorrectly contend permits a private litigant to obtain injunctive relief under the FCRA. DE 17 at 3–4 ("Defendant's primary argument—that private plaintiffs lack standing for injunctive relief under the FCRA—is based on outdated authority. The Eleventh Circuit permits such relief where irreparable harm is shown. Holden v. Holiday Inn Club Vacations, Inc. 98 F.4th 1359, 1371 (11th Cir. 2024).").

At best, Plaintiffs have wholly misread *Holden*. As the Eleventh Circuit explained in *Holden*, the question before the Court was "what amounts to an actionable inaccuracy under the FCRA," *Holden*, 98 F.4th at 1363, not whether private litigants can obtain injunctive relief under the FCRA. Indeed, *Holden* never discusses or mentions injunctive relief. At worst, Plaintiffs have obtained their *Holden* analysis and citation from an unreliable source, such as artificial intelligence ("AI"). The best indication of this possibility is Plaintiffs' citation to page 1371 of *Holden*. *Holden*,

however, ends on page 1369. No level of misreading would cause Plaintiffs to cite to a non-existent page.

This Court previously admonished Plaintiffs for potentially using AI hallucinated legal citations. DE 11 at 2. The Court should not have to warn Plaintiffs again. If Plaintiffs include any other false or inaccurate legal citations in briefing that the Court suspects were generated by AI, the Court will order Plaintiffs to appear in person to explain those citations and why they should not be sanctioned for their conduct.

### III. Recommendation

Because Plaintiffs cannot obtain injunctive relief under the FCRA, the Court **RECOMMENDS DENYING** Plaintiffs' Renewed Motion for Preliminary Injunction [DE 14].

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 19th day of February, 2026.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE