UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:25-CV-62431-DAMIAN/AUGUSTIN-BIRCH

JUANDEL PENA and MARTINA RUIZ,

      Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

      Defendant.

                                   /

### REPORT AND RECOMMENDATION ON DEFENDANT'S
### MOTION TO COMPEL ARBITRATION AND STAY ALL COURT PROCEEDINGS

      This cause comes before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Compel Arbitration and Stay All Court Proceedings. DE 45. The Honorable Melissa Damian, United States District Judge, referred the Motion to the undersigned United States Magistrate Judge for appropriate disposition. *See* DE 35. Pro se Plaintiffs Juandel Pena and Martina Ruiz filed a response, DE 46, and Defendant filed a reply. DE 59. Having carefully considered the record and the briefing and being otherwise fully advised in the premises, the Court **RECOMMENDS GRANTING** Defendant's Motion [DE 45].

### I. Background

      Plaintiffs, proceeding pro se, have sued Defendant for several causes of action arising from Defendant's repossession of a vehicle that Plaintiffs financed with Defendant. DE 1. Defendant answered Plaintiffs' Complaint, raising its right to arbitration, DE 19, and responded to several motions Plaintiffs filed. Defendant now moves to compel arbitration and stay this case. DE 45.

## II. Whether Defendant Properly Conferred

As an initial matter, Plaintiffs contend that Defendant's Motion should be denied under Local Rule 7.1 for failure to confer. DE 46 at 16–17. Defendant's Motion contains the following certificate of conferral, as required by Local Rule 7.1(a)(3): "[T]he undersigned certifies that counsel for Wells Fargo conferred with pro se plaintiffs Juandel Pena and Martina Ruiz regarding the requested relief, and Plaintiffs do not agree to the relief requested." DE 45 at 14. Plaintiffs maintain that this certificate is inaccurate, claiming that Defendant's counsel never asked them for their position on the Motion and that Plaintiff Pena stated on the parties' call that Plaintiffs could not provide a position on any relief without first asking Plaintiff Ruiz, who was apparently not present on that call. DE 46 at 17. Defendant disputes Plaintiffs' claims. *See* DE 59 at 10–11.

It is unnecessary to resolve this dispute. Plaintiffs' response clearly indicates that they oppose Defendant's Motion, and the parties have fully briefed this matter for the Court's consideration. The Court recommends proceeding to evaluate Defendant's Motion on the merits.

## III. Analysis

When evaluating a motion to compel, a court considers three factors: "(1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *MarketSource, Inc. v. Fernandez*, No. 21-CV-23217, 2022 WL 18464969, at *2 (S.D. Fla. Sept. 27, 2022) (quotation marks omitted). The Court will examine these factors in turn.

### A. Valid Agreement to Arbitrate

Defendant maintains that a valid agreement to arbitrate exists, and it cites the Retail Installment Sale Contract ("RISC") that Plaintiffs executed when financing their vehicle. DE 45 at 6; *see also* DE 45-1 at 6–11 (RISC). Defendant explains that Plaintiffs executed the RISC with

2

a dealership and that the dealership subsequently assigned its interests under the RISC to Defendant. DE 45 at 6 n.1; *see also* DE 45-1 at 13 (assignment). The RISC contains an arbitration agreement, which provides, in part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by court action.

DE 45-1 at 10.

In their response, Plaintiffs maintain that the RISC Defendant attaches to its Motion is "Inherently Unreliable." DE 46 at 4. Plaintiffs note that the RISC is watermarked "Non-Authoritative Copy," which they claim demonstrates that the document is "not the authoritative executed version." *Id.* at 5. Instead, Plaintiffs cite what they maintain are the actual agreements that they executed with the dealership. *See* DE 46-1 at 1–42. However, the "Buyer's Order, Agreement & Vehicle Information Form" that Plaintiffs cite as the document that they actually signed with the dealership contains the same arbitration agreement as the arbitration agreement in the RISC. *See id.* at 7. Therefore, it is sufficient to say that Plaintiffs executed an arbitration agreement with the dealership that contains the above quoted arbitration agreement.

In addition to disputing that Defendant produced the correct agreement, Plaintiffs contend that Defendant has not established that it is the assignee of any agreement they executed with the dealership. DE 46 at 8. Specifically, they contend that the assignment Defendant produces "fails on its face" because the document is "forensically inconsistent with every authentic Dealertrack branded document in the record"; "omits the platform's copyright symbol"; "contains no page numbers"; "places the date field on the wrong side"; and "reflects an incomplete date of '08/2022,'

3

missing the day of the month, and **four** months before the December 30, 2022 transaction existed." *Id.*

These arguments fail to demonstrate that Defendant is not the assignee of the arbitration agreement Plaintiffs executed with the dealership. First and foremost, Plaintiffs' arguments presume that the assignment between the dealership and Defendant would have been part of the documents Plaintiffs executed with the dealership and thus would bear the same or similar branding, logos, and numbering. But Plaintiffs provide no reason or explanation for why that would be the case. And second, Plaintiffs' argument concerning the date of the assignment is baseless. The assignment document Defendant cites clearly states that the assignment was executed on December 30, 2022, not August 2022. *See* DE 45-1 at 13. The assignment document also provides that the dealership assigned its interest in Plaintiffs' contract to Defendant. *See id.* Accordingly, Defendant has met its burden of proving the existence and validity of its assignment. *See Simon v. Shearson Lehman Bros.*, 895 F.2d 1304, 1321 (11th Cir. 1990) ("In general, the party that relies on an assignment has the burden of proving its existence and validity.").

To conclude this section, Plaintiffs executed an arbitration agreement with the dealership, which provides that Plaintiffs must arbitrate any claims between them, the dealership, and the dealership's assigns. Further, Defendant has demonstrated that the dealership assigned that arbitration agreement to Defendant.

### B. Whether an Arbitrable Issue Exists

"An agreement to arbitrate threshold arbitrability issues is often called a 'delegation' agreement, because it delegates the resolution of disputes about the arbitrability of the parties' claims to an arbitrator." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022). "Arbitrability issues involve fundamental questions that will determine whether a claim

will be brought before an arbitrator." *Id.* at 1298 (quotation marks omitted). "However, questions of arbitrability do not come in only one shape. There are a few basic kinds. Some arbitrability questions are about the 'scope' or 'applicability' of the parties' arbitration agreement—*i.e.*, what set of disputes the arbitration agreement covers, and whether it governs the particular dispute at hand." *Id.* at 1298–99. "Other arbitrability questions are about the 'validity' or 'enforceability' of an arbitration agreement—*i.e.*, whether the parties have entered into a legally operative arbitration agreement that is enforceable under law." *Id.* at 1299.

"When the parties' contract includes no delegation agreement, the operation of these rules is fairly straightforward: the court simply decides whether there is either a generally applicable contract defense or a federal statute outside the FAA that makes the parties' agreement to arbitrate their claims invalid or unenforceable." *Id.* at 1303. "When the parties' contract includes a delegation agreement, the situation is different. A delegation agreement commits questions of arbitrability to an arbitrator's review, including questions about the validity or enforceability of the parties' primary arbitration agreement." *Id.* Accordingly, "if the court finds that the challenge to the validity or enforceability of the delegation agreement lacks merit—or if no such challenge is made—the court must enforce the delegation agreement and send any challenges to the validity or enforceability of the primary arbitration agreement to the arbitrator." *Id.* at 1304.

Here, the arbitration agreement Plaintiffs executed contains a delegation agreement that delegates matters of arbitrability to the arbitrator. *See* DE 45-1 at 10 ("Any claim or dispute, whether in contract, tort, statute, or otherwise (*including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute*) . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action." (emphasis added)); DE 46-

1 at 7 (including the same language). Therefore, the parties have agreed to delegate the issue of arbitrability to an arbitrator, and Plaintiffs raise no challenge to that delegation clause.

Instead, Plaintiffs misunderstand and misstate the law, essentially getting it backwards. Plaintiffs argue that a "delegation clause only operates if a valid arbitration agreement exists." DE 46 at 3. But, as explained above, parties—through a delegation clause—can delegate issues regarding the validity of an arbitration agreement to an arbitrator. *See Attix*, 35 F.4th at 1304 (explaining that when there is either no or an unsuccessful challenge to the validity of a *delegation agreement*, "the court must enforce the delegation agreement and send any challenges to the validity or enforceability of the primary arbitration agreement to the arbitrator"). For these reasons, whether there is an arbitrable issue and any of Plaintiffs' challenges to the arbitration agreement and the agreements containing the arbitration agreement must be heard by an arbitrator.

Furthermore, even if Plaintiffs' arguments against the arbitration agreement can be charitably construed as arguments against the validity of the delegation agreement, none of Plaintiffs' arguments have merit.[1] First, Plaintiffs contend that there was no meeting of the minds because they signed all of their documents in under three minutes and "no arbitration clause was explained or pointed out." DE 46 at 9. Plaintiffs also offer this reason to claim that the "agreement" is procedurally unconscionable. *Id.* at 12–13. But the law presumes that Plaintiffs read the entire

---

[1] The Court does not address Plaintiffs' arguments that their claims fall outside the scope of the arbitration agreement, DE 46 at 14–15, given that the arbitration agreement clearly reserves that issue for the arbitrator. *See* DE 45-1 at 10 (reserving any dispute about the scope of the arbitration agreement to the arbitrator); DE 46-1 at 7 (same).

The Court also does not address Plaintiffs' arguments that Defendant materially breached the agreement containing the arbitration agreement, DE 46 at 15–16, because such a matter is also reserved for the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *Farrow v. Citibank, N.A.*, No. 8:25-CV-2417-KKM-SPF, 2026 WL 437285, at *4 (M.D. Fla. Feb. 17, 2026) ("[W]hether Citibank breached the Card Agreements is immaterial to the arbitration agreement's validity. That is because an arbitration agreement is severable from the rest of a contract. When a party challenges the contract as a whole—rather than specifically the arbitration provision within it—that challenge must be referred to the arbitrator." (citation omitted)).

agreement and understood the arbitration and delegation agreements therein, regardless of how quickly they signed the documents and regardless of whether the terms in those agreements were explained to them.[2] *See Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 84 (Fla. 5th DCA 2016) ("The law necessarily presumes that parties to a contract have read and understood its contents."); *Reliable Fin. Co. v. Axon*, 336 So. 2d 1271, 1274 (Fla. 2d DCA 1976) ("The law is clear that a party to a writing cannot deny its contents on the ground that he signed it without reading it, unless he avers facts showing circumstances which prevented his reading it or that he was induced by statements of other parties to desist from reading it."). Plaintiffs do not claim that anything prevented them from reading the terms of the agreements they signed, and, to the extent Plaintiffs signed all the agreements in a short timeframe, that too is insufficient to establish that their agreements are invalid. *See Reliable Fin. Co.*, 336 So. 2d at 1274 ("[T]he only explanation made by the Axons was that appellant's office manager pushed the papers in front of them for their signatures as fast as they would sign them. This, we think, falls far short of establishing circumstances sufficient to avoid the rule . . . ."); *see also Hobby Lobby Stores, Inc. v. Cole*, 287 So. 3d 1272, 1276 (Fla. 5th DCA 2020) (holding that an arbitration agreement was not procedurally unconscionable where the signer did not demonstrate that he was rushed, pressured, or coerced into signing the agreement; that he expressed confusion about any of the terms; or that he lacked an opportunity to inquire about the terms or enlist help if confused).

Second, Plaintiffs contend that the "clause" is substantively unconscionable because it is a one-sided clause. DE 46 at 13. The delegation agreement, however, applies equally to both parties.

---

[2] The parties do not dispute that Florida law governs issues of contract formation in this matter. *See* DE 46 at 12; DE 59 at 10; *see also Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (explaining that "courts generally should apply ordinary state-law principles that govern the formation of contracts" when evaluating arbitration agreements (quotation marks and ellipsis omitted)).

*See* DE 45-1 at 10; DE 46-1 at 7. As such, Plaintiffs' argument that the agreement reserves "court access for the drafter while eliminating it for the consumer" is meritless. DE 46 at 13. Plaintiffs also claim that the "clause" "forces Plaintiffs to New York City, waives punitive damages, eliminates appellate review, and imposes substantial fees without consideration of Plaintiffs' financial circumstances." *Id.* However, Plaintiffs do not identify the language of the arbitration or delegation agreements that imposes these requirements, and it appears that most of these assertions are incorrect. For example, the arbitration agreement provides that the arbitration hearing will be held either in the federal district where Plaintiffs reside or in the federal district where the contract was executed.[3] DE 45-1 at 10; DE 46-1 at 7. The arbitration agreement further provides that Plaintiffs' fees will be paid up to a maximum of $5,000, or potentially more if otherwise required, and the arbitrator's award can be appealed as permitted under the Federal Arbitration Act. DE 45-1 at 10; DE 46-1 at 7. In light of these terms, the delegation agreement is not substantively unconscionable so as to prevent enforcement thereof. *See Hobby Lobby*, 287 So. 3d at 1276 (explaining that substantive unconscionability "concerns whether the terms of the contract are so unreasonable or unfair" that a "court should withhold their enforcement").

### C. Whether Defendant Waived the Right to Arbitrate

To determine whether a defendant has waived its right to arbitrate, courts consider "whether [the defendant] substantially participated in the litigation as one factor in a holistic analysis of whether [the defendant], through participation in this case or by any other action or inaction, waived its right to arbitrate." *Amargos v. Verified Nutrition, LLC*, 653 F. Supp. 3d 1269, 1275 (S.D. Fla. 2023). For the Court's consideration, Plaintiffs highlight the following actions and

---

[3] The Court notes that Plaintiff Martina Ruiz lists her address as New York. Therefore, if the arbitration occurs in Florida, it would ostensibly impose the same burden on Plaintiff Ruiz as if Plaintiff Pena, who lists his address as Florida, is forced to arbitrate in New York.

inactions by Defendant to demonstrate that it has waived its right to arbitrate: (1) the sending of a "post-suit letter . . . engaging the merits with no mention of arbitration," (2) the filing of a response to Plaintiffs' motion for preliminary injunction, (3) the filing of a motion for assignment of a District Judge, (4) the filing of a motion for leave to file a sur-reply to Plaintiffs' motion for preliminary injunction, (5) the filing of a response to Plaintiffs' motion to strike Defendant's affirmative defenses, (6) the filing of a joint scheduling report, and (7) waiting until "months of active litigation" to move to compel arbitration. These actions and inactions fail to demonstrate that Defendant waived its right to arbitrate.

The "post-suit" letter Plaintiffs appear to refer to is a letter Defendant sent on December 4, 2025, after Plaintiffs initiated this litigation but on the same day Defendant was served, *see* DE 15, in which Defendant provided a response to Plaintiffs' inquiry and requests. *See* DE 14-1 at 12–17. This letter, which occurred outside of the scope of this litigation and was in response to Plaintiffs' inquiry and requests, does not evidence Defendant's substantial participation in this litigation. The same holds true for Defendant having to respond to the various motions Plaintiffs filed, for Defendant's exercise of its right to have a District Judge assigned to this matter, and for Defendant's compliance with Judge Damian's Order to file a joint scheduling report. *See* DE 36. Defendant answered Plaintiffs' Complaint on December 26, 2025, raising its right to arbitration, DE 19 at 15, and subsequently moved to compel arbitration almost two months later on February 27, 2026. DE 45. In light of these considerations, Defendant did not waive its right to arbitrate. *Cf. Amargos*, 653 F. Supp. 3d at 1276 (finding that defendant did not waive arbitration when it participated in a scheduling conference, submitted a joint scheduling report, filed a joint notice of mediator selection, and moved to compel arbitration two months after filing its answer, which did not seek arbitration); *Lawrence v. Experian Info. Sols., Inc.*, No. 1:25-CV-288-MHC-CMS, 2025

WL 1431272, at *7 (N.D. Ga. May 15, 2025) (finding a response to a motion to strike, among other limited case participation, insufficient to constitute a waiver of arbitration rights), *report and recommendation adopted*, No. 1:25-CV-288-MHC-CMS, 2025 WL 1650380 (N.D. Ga. June 3, 2025).

Plaintiffs further claim that Defendant's "Office of the President representative Crystal actively solicited damage evidence from Plaintiffs, then ignored ten or more follow-up calls from Plaintiff Pena, and only upon finally responding informed Plaintiff Pena that if he chose to retain counsel, to have his attorney contact her." DE 46 at 11. From what Plaintiffs cite as evidence of these requests, it appears that this was pre-suit conduct, which again fails to demonstrate Defendant's substantial involvement in this litigation. Plaintiffs do not provide any authority standing for the proposition that such pre-suit conduct can waive the right to arbitrate. Defendant has not waived its right to arbitrate.

## IV. Recommendation

For the foregoing reasons, the Court **RECOMMENDS GRANTING** Defendant's Motion [DE 45]. Furthermore, in accordance with 9 U.S.C § 3, the Court additionally recommends staying this matter pending arbitration. Lastly, the Court does not recommend granting any of the relief Defendant requests in its reply, such as dismissal of this case with prejudice or awarding Defendant its fees and costs due to Plaintiffs' purported continued use of artificial intelligence to draft briefing and obtain legal citations. *See Celeritech Int'l Corp. v. Superstar Holdings Inc.*, 348 F.R.D. 127, 139 (S.D. Fla. 2024) (explaining that relief requested in a reply is "not considered properly raised").

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations.

10

28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 27th day of May, 2026.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE

**Copies to:**

Juandel Pena
7170 Custer Street
Hollywood, FL 33024

Martina Ruiz
24 Monument Walk 3E
Brooklyn, NY 11205